```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                   06-CV-851(JMR/FLN)
```

Patricia Unterschuetz,          )
                                )
    Plaintiff-Relator,          )
                                )
    v.                          )         ORDER
                                )
In Home Personal Care, Inc.;    )
and Holmquist & Associates,     )
Ltd.                            )
                                )
    Defendants.                 )

    Plaintiff-Relator, Patricia Unterschuetz,[1] claims she was wrongfully terminated from her employment with defendant In Home Personal Care, Inc. ("In Home"), and further claims tortious interference with employment by defendant Holmquist & Associates, Ltd. ("Holmquist"). Plaintiff claims In Home violated the False Claims Act, 31 U.S.C. § 3729 (a)(1), (2), and (7), and that she was terminated for bringing her concerns about those violations to management.

    In Home denies plaintiff's claims and states plaintiff was fired for failing "to recognize that the software system was not working."

    In Home's motion to dismiss Counts I, II, and III of plaintiff's complaint is granted; its motion for summary judgment on Counts IV and VI is denied; and Holmquist's motion for summary

---

[1] For purposes here, Patricia Unterschuetz will be referred to only as plaintiff.

judgment is granted.

I. Background[2]

In Home provides in-home health services to individuals using personal care attendants. The care attendants schedule appointments and fill out timecards recording the number of hours spent with each client. (Sullivan Dep. 12:15-24.) The clients sign the timecards, and if the client is eligible for government reimbursement, In Home bills the government for the services.

Kevin Sullivan is In Home's president. He consults with a Board of Advisors when making business decisions. Mike Holmquist serves on the Board. He is the owner of Holmquist & Associates, and began serving as In Home's accountant in 1991. He participated in plaintiff's salary review and met with her in operational meetings.

A. False Claims Act

Plaintiff was hired by In Home in February, 2004, as its office manager. One of her job duties was to reconstruct account receivables. While doing so, she states she discovered government overpayments to In Home "for a significant number of clients." (Compl. ¶ 28.) According to plaintiff, there were between 20 and

---

[2]The Court considers all facts in the light most favorable to plaintiff, the non-moving party. As these motions are considered pursuant to Rules 9(b) and 56 of the Federal Rules of Civil Procedure, any "facts" the Court "finds" are taken from the parties' pleadings, and are not to be considered as determinations on the merits.

50 overpayments (Unterschuetz Dep. 73:19-21), but she neither identifies specific payments nor the total overpaid sum.

Plaintiff claims she "immediately" reported her findings to Sullivan, who replied "he was not concerned," and warned her, "[i]f you are going to be here you just have to accept the way things are done." (Compl. ¶ 23.) In January, 2005, plaintiff voiced her concerns to Holmquist. She claims Holmquist said returning the payments could "open up a whole can of worms" and lead to a government investigation. (Id. ¶ 25.) Two days later, she talked again with Sullivan, who assured her "things would work themselves out." (Id. ¶ 26.)

### B. Alleged Fraudulent Claims and Records

Plaintiff alleges In Home fabricated records and presented false claims for government reimbursement for a number of clients and personal care attendants, including Murphy, Jalove, Bender, Felling, and Abbott.

#### 1. Alexander Murphy

Personal care attendants typically logged 15 hours a week with Alexander Murphy. (Compl. ¶ 31.) On April 13, 2005, Alexander's parents phoned In Home to report that government reimbursement requests were submitted for days "when no one actually cared for their child." (Id. ¶ 30.) Plaintiff relayed this complaint to Sullivan and the billing staff. (Unterschuetz Dep. 101:21-102:3.) She claims the billing staff reported that, although they did not

have a timecard for the 15 hours in question, they billed for the time, assuming the work had been done. (Id. at 104:1-17.) She also claims Sullivan asked her to assure the Murphy family that In Home would reimburse the government, and then to "just leave it." (Id. at 143:22-24.) The following day, plaintiff asked In Home's billing specialist to refund the government overpayment. (Compl. ¶ 35.)

### 2. Jalove

Plaintiff alleges Sullivan instructed Jalove, a personal care attendant, to bill more hours than she worked to make the job "worth [her] time." (Unterschuetz Dep. 119:7-25.)

### 3. Lillian Abbott

Plaintiff claims In Home did not create timecards for Lillian Abbott, yet it billed the government for services rendered on her behalf. (Compl. ¶ 40.) Plaintiff claims she witnessed an In Home employee working with Lillian Abbott to create past and future timecards because "they didn't have any for the previously billed periods." (Unterschuetz Dep. 158:15-21.) She does not recall, however, when this occurred, and offers no evidence showing the hours reported on the recreated timecards were false. (Id. at 156:21-24.)

### 4. Carrie Bender

Plaintiff claims another client, Carrie Bender, received no weekend care, yet In Home billed the government as if she had.

(Relator's ex. 19, ¶ 7.) She further states In Home did not have timecards for Bender for April, 2004, but billed over $2,800 during this time. (Relator's Mem. Opp'n Defs.' Mot. 26.)

     5.  <u>Mark Felling</u>

Plaintiff claims Sullivan encouraged personal care attendants working with Mark Felling, a purportedly difficult client, to bill more hours than actually worked to compensate for their trouble. (Unterschuetz Dep. 120:3-9.) She states Felling's attendants billed upward of 30 hours a day. (<u>Id.</u> at 121:18-25, 128:20-24.) When she reported this discrepancy to Sullivan, he asked her to spread the hours out. She initially refused to do so, but upon Sullivan's insistence, she made the change. (Compl. ¶¶ 36-42; Unterschuetz Dep. 161:12-164:16.) She claims she "can't recall any additional" instances when Sullivan instructed staff to bill more hours than they worked beyond the Felling and Jalove cases. (Unterschuetz Dep. 120:10-15.)

   C.  <u>Plaintiff's Termination</u>

Plaintiff claims she was terminated from her employment because she complained about In Home's billing practices. She points to a performance based raise she received toward the end of 2004, and says she was not warned that her job was in jeopardy.

In Home tells a different story. Holmquist says Sullivan approached him with concerns regarding plaintiff's job performance "starting in January of 2005 or maybe December 2004." (M.

Holmquist Dep. 21:14-20.) According to Holmquist, Sullivan was concerned about plaintiff's struggle in implementing a new software program and collecting past due receivables. (Id. at 21:23-22:3.) They discussed these concerns over the next several months. Plaintiff claims in February, 2005, Holmquist suggested placing her on probation. (Relator's Mem. Opp'n Defs.' Mot. 20-21.)

Sullivan does not recall this suggestion, but in any event, plaintiff was not put on probation. (Sullivan Dep. 129:22-130:12.) On April 1, 2005, Sullivan purportedly told Holmquist he was going to fire plaintiff. (M. Holmquist Dep. 60:3-8.) On April 15, 2005, Holmquist and Sullivan met jointly with plaintiff and terminated her employment. In explaining their reason to do so, Sullivan noted the software system she spearheaded was not working, and that she failed to reconcile accounts. (Sullivan Dep. 50:1-3, 52:23-25.)

In Home denies plaintiff's claims and moves for dismissal of the claims under the False Claims Act, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). In Home also seeks summary judgment on plaintiff's FCA and retaliatory firing claims. Holmquist moves for summary judgment on the tortious interference claim.

II. Discussion

    A. Rule 9(b) Pleading

Plaintiff claims In Home violated the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1), (2), and (7), an anti-fraud

statute.  When doing so, a plaintiff must comply with Rule 9(b)'s particularity requirement.  <u>United States ex rel. Kinney v. Stoltz</u>, 327 F.3d 671, 675 (8th Cir. 2003).  The particularity requirement is a marked departure from the federal rules' simple pleading philosophy.  <u>See</u> <u>TCF Banking and Sav., F.A. v. Arthur Young & Co.</u>, 706 F. Supp. 1408, 1411 (D. Minn. 1988).  An FCA violation claim requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The complaint must allege "such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."  <u>United States ex rel. Joshi v. St. Luke's Hosp., Inc.</u>, 441 F.3d 552, 556 (8th Cir. 2006).  In sum, fraud claims "must identify who, what, where, when, and how."  <u>United States ex. rel. Costner v. United States</u>, 317 F.3d 883, 888 (8th Cir. 2003).  Plaintiff utterly fails to meet this requirement.

In Count I of the complaint, plaintiff alleges In Home retained government overpayments "for a significant number of clients," in violation of 31 U.S.C. § 3729(a)(7).  (Compl. ¶ 28.) This simple allegation notwithstanding, she fails to identify any specific instance where In Home did not repay the government any specific sum for any specific service.

She argues that, because the overpayments occurred "over an extensive period of time," she need not provide specificity.

(Relator's Mem. Opp'n Defs.' Mot. 24.) She suggests that a blunderbuss allegation relieves an FCA plaintiff of her duty to identify the false claims or overpayments alleged.

In Count II, plaintiff accuses In Home of knowingly presenting false claims to the government, in violation of 31 U.S.C. § 3729(a)(1). The proffered evidence supporting this assertion is the Murphy family's phone call saying In Home billed them for 15 hours of care it did not provide. Plaintiff further asserts In Home instructed client Felling to inflate In Home's hours. (Compl. ¶¶ 30, 36.) Neither the complaint nor plaintiff's deposition identifies the specific timecards alleged to be falsified, the dates of false billings, whether those allegedly false billings were submitted for payment, or the sum allegedly obtained by fraud (either per occasion, or in total). This does not begin to satisfy the "who, what, where, when, and how" requirement.

In Count III, plaintiff accuses In Home of knowingly making false records to obtain government reimbursements, in violation of 31 U.S.C. § 3729(a)(2). Plaintiff claims she witnessed an In Home employee helping Lillian Abbott create past and future timecards because "they didn't have any for the previously billed periods." (Unterschuetz Dep. 158:15-21.) She does not, however, provide the dates on which these events occurred, or any evidence showing the recreated timecards contained false or fraudulent information. (Id. at 156:21-22.) The "facts" plaintiff offers do not meet Rule 9(b)'s particularity requirements.

8

While courts can require some lower degree of specificity in the face of general fraud allegations, a relator "must provide some representative examples of the fraud which detail the specifics of who, where[,] and when."  United States ex rel. Minn. Ass'n of Nurse Anesthetists v. Allina Health Syst., No. 04-96-734, 1997 U.S. Dist. LEXIS 21402, at *33 (D. Minn. Mar. 3, 1997); see also United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 557 (8th Cir. 2006) (approving dismissal when relator fails to "allege any details concerning false claims actually submitted for payment," but rather "vaguely allege[s] the fraudulent schemes were pervasive and wide-reaching in scope").

Plaintiff's complaint fails to "even remotely suggest how much money is at issue."  Goughnour v. REM Minn., Inc., No. 06-1601, 2007 U.S. Dist. LEXIS 85880, at *8 (D. Minn. Nov. 20, 2007).  Her brief, with no discernable basis, guesstimates overpayments to be "hundreds to thousands of dollars" per occurrence. (Relator's Mem. Opp'n Defs.' Mot. 6.)  The complaint discloses no dates for any alleged fraudulent reimbursement requests.  See Joshi, 441 F.3d at 554.  Accordingly, Counts I, II, and III of plaintiff's complaint are dismissed.

B.  Summary Judgment

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986). This Court examines the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences. Hammond v. Northland Counseling Ctr., Inc., 218 F.3d 886, 891 (8th Cir. 2000). The moving party is entitled to summary judgment if "the nonmoving party has failed to make a sufficient showing on an essential element of her [or his] case with respect to which she [or he] has the burden of proof." Id. (citation omitted).

Because plaintiff's FCA counts are dismissed, In Home's motion for summary judgment concerning those claims is moot. But in an exercise of caution, the Court considers In Home's summary judgment motion on those claims, as well as its motion for summary judgment on plaintiff's retaliation claims. Holmquist seeks summary judgment on the claim of tortious interference.

    1.  False Claims Act

If considered as a motion for summary judgment, In Home prevails. It does so because of plaintiff's failure to adduce facts showing a need for a trial by jury concerning her FCA claims.

In Count I, plaintiff claims In Home used false records to avoid returning government overpayments, in violation of 31 U.S.C. § 3729(a)(7). To recover on this claim, plaintiff must highlight an obligation In Home owed to the government. United States v. Q Int'l Courier, Inc., 131 F.3d 770, 773 (8th Cir. 1997). She fails to respond with admissible evidence to support her claim, but simply states she is unsure how many cases involved overpayments,

10

and "can't say" whether there were more or less than 30. (Unterschuetz Dep. 72:18-73:24.) She is unable to highlight even one specific obligation In Home owed the government.

In Count II, plaintiff claims In Home presented false claims for government payment. See 31 U.S.C. § 3729(a)(1). It is well-established that plaintiff must demonstrate (1) In Home presented a claim to the government; (2) the claim was false; and (3) In Home knew the claim was false. United States v. Basin Elec. Power Coop., 248 F.3d 781, 803 (8th Cir. 2001). Plaintiff attempts to satisfy this requirement by citing the Murphy, Felling, and Bender cases as instances of fraudulent billing. (Compl. ¶¶ 30-31, 36-37; Relator's Mem. Opp'n Defs.' Mot. 24-27.)

These situations do not suffice, however, because plaintiff admits having learned of only one instance of overbilling in the Murphy case, and she never saw a timecard to confirm the overbilling. (Unterschuetz Dep. 108:8-111:2.) She points to In Home employee Swalley's deposition to support her claim that Mark Felling billed more than 24 hours in one day. (Relator's Mem. Opp'n Defs.' Mot. 27.) Swalley explains, however, that when she saw more than 24 hours billed in one day, she contacted her supervisor and Mark Felling. The billing error was then corrected. (Swalley Dep. 24:8-26:23.) The sworn testimony indicates that any asserted overcharge was corrected; there is no evidence at all suggesting the erroneous claim was ever submitted, let alone paid. Plaintiff does not provide one single date for any false submission

to the government, and she proffers no evidence that In Home actually presented the government with even a single false claim concerning Bender.

Finally, in Count III, plaintiff accuses In Home of making false records for government payment. See 31 U.S.C. § 3729(a)(2). Case law requires a claimant alleging a violation of this statute to show:  (1) a statement was made to receive government money; (2) the statement was false; and (3) the defendant submitting the statement knew it was false. United States ex rel. Kinney v. Hennepin County Med. Ctr., No. 97-1680, 2001 U.S. Dist. LEXIS 25475, at *35-36 (D. Minn. Aug. 22, 2001).  Here, again, plaintiff's "evidence" misses the mark.  She claims she witnessed an In Home employee working with Lillian Abbott to create past and future timecards because "they didn't have any for the previously billed periods."  (Unterschuetz Dep. 158:15-21.)  She does not recall, however, the year at issue, and there is no evidence that the recreated timecards documented false hours.  (Id. at 156:21-22.)  There is no indication whatsoever that these allegations are based on personal knowledge.

Even viewing these facts in the light most favorable to plaintiff, she fails to raise genuine issues of material fact as to the FCA claims.

### 2. Retaliation Claims

In Home seeks summary judgment on Counts I-III, and the retaliation claims, Counts IV and VI, pursuant to 31 U.S.C. §

3730(h) and Minn. Stat. § 181.932.

The FCA prohibits employment discrimination "because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under [the FCA]." 31 U.S.C. § 3730(h). In order to defeat summary judgment on this claim, plaintiff must show (1) she engaged in FCA protected conduct; (2) In Home knew she engaged in such conduct; (3) In Home discriminated against her for engaging in such conduct; and (4) In Home's retaliation was motivated "solely" by her protected activity. Wilkins v. St. Louis Hous. Auth., 314 F.3d 927, 932-33 (8th Cir. 2002).

Under Minnesota's Whistleblower Act, employees who "in good faith, [report] a violation or suspected violation of any federal or state law . . . to an employer," are protected from employer-retaliation. Minn. Stat. § 181.932. When resisting a motion for summary judgment on a whistleblower claim, the employee must show (1) she engaged in statutorily-protected conduct; (2) the employer took adverse employment action against her; and (3) there was a causal connection between her conduct and the employer's actions. Buytendorp v. Extendicare Health Servs., 498 F.3d 826, 834 (8th Cir. 2007).

Whistleblower claims are considered under the familiar McDonnell Douglas burden shifting analysis. See Buytendorp, 498 F.3d at 834. If the employee establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the termination. McDonnell Douglas

13

Corp. v. Green, 411 U.S. 792, 802 (1973).  If the defendant provides a legitimate non-retaliatory reason for the termination, the burden shifts back to the employee-relator to demonstrate the provided reason is pretextual.  Buytendorp, 498 F.3d at 834.

Similarly, under § 3730(h), if a plaintiff establishes a prima facie case, the "burden of proof shifts to the employer to prove affirmatively that the same decision would have been made even if the employee had not engaged in protected activity."  Norbeck v. Basin Elec. Power Coop., 215 F.3d 848, 850-51 (8th Cir. 2000) (citing S. Rep. No. 99-345, at 35 (1986), as reprinted in 1986 U.S.C.C.A.N. 5266, 5300).

Plaintiff invokes both the state and federal statutes.  The loss of a job is unquestionably an adverse employment action.  In Home, however, denies plaintiff's ability to demonstrate a causal link between her reports of alleged fraud and her termination. Further, according to In Home, even if plaintiff can show a prima facie case, it has non-retaliatory reasons for her termination. Taking the facts as pleaded, as required at this time, the Court finds plaintiff has established a factual question which may be submitted to a jury.  As a result, summary judgment is denied on Counts IV and VI, retaliation and whistleblowing.

### 3.   Tortious Interference

Defendant Holmquist seeks summary judgment on Count V, tortious interference with employment. To survive summary judgment

14

on such a claim, a plaintiff must show (1) the existence of a contract; (2) the alleged wrongdoer had knowledge of the contract; (3) and intentionally procured a breach of the contract; (4) without justification; (5) resulting in damages. Maness v. Star-Kist Foods, Inc., 7 F.3d 704, 709 (8th Cir. 1993) (citation omitted). The Court finds plaintiff has failed to establish facts showing a triable issue on this claim.

Plaintiff argues Holmquist "intentionally and with bad motive" interfered with her employment. (Compl. ¶ 70.) In December, 2004, or January, 2005, Holmquist remembers Sullivan expressing concerns about plaintiff's job performance. (M. Holmquist Dep. 21:18-22:10.) Plaintiff claims Holmquist suggested to Sullivan that he place her on probation in February, 2005. (Relator's Mem. Opp'n Defs.' Mot. 20-21.) Sullivan does not recall this, and there is no evidence showing plaintiff was put on probation. (Sullivan Dep. 129:22-130:12). Around April 1, 2005, Sullivan announced his intention to fire plaintiff. (M. Holmquist Dep. 61:4-5.) Holmquist emailed Sullivan asking him to "think about this one more time," and outlined her strengths and weaknesses. (Id. at 61:6-10.) According to Holmquist, he actually advocated for her "right up until the end." (Id. at 62:1.) Holmquist was present when plaintiff was terminated and read a statement saying In Home was eliminating her position. (Id. at 63:13-15.) The Court finds, as a matter of law, these facts - even if proven - do not make a

15

triable case of tortious interference with employment.

An employer is entitled to consult with colleagues and business advisors before making an employment decision, and, absent more, those consulted do not thereby become liable for participating in such discussions. See Nordling v. N. State Power Co., 478 N.W.2d 498, 505 (Minn. 1991) ("If a corporation's officer or agent acting pursuant to his company duties terminates or causes to be terminated an employee, the actions are those of the corporation."). To hold otherwise would "chill corporate personnel from performing their duties." Id. at 505-06.

This defense is lost only when a corporate agent's actions are motivated by "malice and bad faith, that is, by personal ill-will, spite, hostility, or a deliberate intent to harm the employee." Petroskey v. Lommen, Nelson, Cole & Stageberg, 40 F.3d 278, 280-81 (8th Cir. 1994) (citation omitted). Absent some affirmative showing that the advisor "intentionally and improperly" interfered, this claim fails. See Nordling, 478 N.W.2d at 506. Here, plaintiff's complaint centers on Holmquist's presence at her termination meeting. He was well within the scope of his employment as an accountant and advisor to In Home to be present at this meeting. Ulrich v. City of Crosby, 848 F. Supp. 861, 872 (D. Minn. 1994) (recognizing an employer may be liable for interference when acting "outside the scope of his or her duties"). The Court finds there is simply no cognizable evidence from which a

reasonable jury could find Holmquist interfered, tortiously or in any other fashion, with plaintiff's employment. Consequently, Holmquist's motion for summary judgment on Count V is granted.

III. Conclusion

For the reasons stated above, IT IS ORDERED that:

1. Defendant In Home's motion to dismiss plaintiff's FCA claims pursuant to Rule 9(b) [Docket No. 55] is granted as to Counts I, II, and III.

2. Defendant In Home's motion to dismiss Counts IV and VI is denied [Docket No. 55].

3. Defendant Holmquist's motion to dismiss Count V is granted [Docket No. 46].

Dated:   October 14, 2008

                S/JAMES M. ROSENBAUM
                JAMES M. ROSENBAUM
                United States District Judge